IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MATTHEW L. BENSON, #B-26167,  )
                              )
        Plaintiff,             )
                              )
vs.                           )     CIVIL NO. 10-579-JPG
                              )
ROGER E. WALKER, *et al.*,    )
                              )
        Defendants.           )

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Matthew L. Benson, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, arising out of an incident that occurred while Plaintiff was housed in the Big Muddy Correctional Center. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable
> claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief
>     may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from
>     such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

**The Complaint**

Initially, the Court notes that Plaintiff's Complaint (Doc. 1) alone consists of 21 pages, detailing allegations against 16 separate Defendants. In addition, Plaintiff has filed a 40-page "Addendum - Expounded Version of Complaint" (Doc. 1-1) and 60 pages of Exhibits (Doc. 1-2).

> Rule 8(a)(2) requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.' In addition, Rule 8(e)(1) states that '[e]ach averment of a pleading shall be simple, concise, and direct.' The primary purpose of these provisions is rooted in fair notice: Under Rule 8, a complaint 'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is.' *Wade v. Hopper,* 993 F.2d 1246, 1249 (7th Cir.) (citations omitted), *cert. denied,* 510 U.S. 868, 114 S. Ct. 193, 126 L. Ed. 2d 151 (1993); *see also Jennings v. Emry,* 910 F.2d 1434, 1436 (7th Cir. 1990) (stating that a complaint 'must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in

> search' of what it is the plaintiff asserts). A complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation.

*Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994). *See also Conley v. Gibson*, 355 U.S. 41, 48 (1957); *Dausch v. Rykse*, 52 F.3d 1425, 1430 (7th Cir. 1994).

Despite its excessive length, the Court will review the complaint (Doc. 1). However, the Court finds that Plaintiff's "Addendum - Expounded Version of Complaint" (Doc. 1-1) does not provide a short and plain statement of the claim, and thus will not be considered. In addition, at this stage of the litigation, voluminous exhibits are unnecessary. *See* FED. R. CIV. P. 26-37. Should Plaintiff choose to re-file any of the instant claims that are not dismissed with prejudice, or file any new action in the future, Plaintiff is warned that any pleading that does not comply with Rule 8 may be stricken.

Plaintiff's complaint stems from an August 8, 2008, incident in which he claims he was attacked by other inmates and beaten unconscious, while Defendants John Doe Correctional Officers One and Two looked on without making any attempt to intervene to stop the attack. Plaintiff claims he was subsequently issued a false and malicious disciplinary report by Defendant Schuler, for fighting and giving false information to a prison employee. The resulting discipline imposed included six months of segregation and C grade, revocation of six months' good conduct credit, and a transfer to another institution. Plaintiff filed a grievance over the disciplinary action, but was later informed that it had not been timely filed. Plaintiff also claims due process violations over the alleged mishandling of his attempts to pursue this grievance.

Plaintiff originally filed his complaint on July 30, 2010, in the Central District of Illinois (Case No. 10-3192). The case was transferred to this Court on August 3, 2010, as venue more

properly lies in this district.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into three (3) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Failure to Protect from Inmate Assault**

Plaintiff asserts that two unnamed correctional officers, Defendants John Doe One and Two, observed the assault on Plaintiff from their position in the officers' control station but failed to intervene. The incident began with a verbal confrontation between Plaintiff and another inmate on the upper deck of the lunch area. Plaintiff moved away from the other inmate to the lower deck, but before he could get to his secured cell he was surrounded by other inmates, hit in the back of the head, and knocked unconscious to the floor, where he was beaten, kicked and stomped. Neither Defendant acted to stop the attack, nor did they come to Plaintiff's assistance. Plaintiff asserts that these defendants must have been aware of the attack due to their proximity and vantage point, and indicates that he made some attempt to get their attention to seek help. Only Defendant John Doe Two came to check on Plaintiff, some 20 minutes after the attack, after Plaintiff had regained consciousness and returned to his cell.

While Plaintiff outlines at length the steps he took to pursue his grievance over the disciplinary sanctions imposed on him as a result of this same incident (for engaging in a fight and other violations), there is no indication that Plaintiff ever filed any grievance over the original failure by Defendants John Doe One and Two to come to his aid after he was attacked.

Therefore, the statute of limitations on filing the failure to protect claim against these Defendants began to run on the date of the incident, August 8, 2008. Plaintiff timely filed this action on July 30, 2010, nine days before the expiration of the two-year limitation period. However, in order to proceed against these John Doe defendants, Plaintiff must amend his complaint to identify by name the individuals allegedly at fault. Plaintiff's time frame to file such an amendment expired on August 8, 2010. A Section 1983 complaint cannot be amended to identify an unnamed defendant correctional officer after the limitations period has run, unless "there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake." *King v. One Unknown Federal Correctional Officer*, 201 F.3d 910, 914 (7th Cir. 2000) (citations omitted); *Worthington v. Wilson*, 8 F.3d 1253 (7th Cir. 1993); FED. R. CIV. P. 15(c)(3). Plaintiff has made no allegations that the unnamed defendants prevented him from discovering their identity, thus the two-year statute of limitations requires dismissal of these defendants.

Plaintiff does not allege that any of the other defendants were present or in any way directly involved in failing to prevent or halt the attack on him. Moreover, there is no supervisory liability on this failure to protect claim. Plaintiff, like many other inmates, seems to think that any prison employee who knows (or should know) about his problems has a duty to fix those problems. That theory is in direct conflict with the well-established rule that "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *See also Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to Section 1983 actions). As Chief Judge Easterbrook has stated,

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor . . . and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to [results] That can't be right. *See Durmer v. O'Carroll*, 991 F.2d 64 (3$^d$ Cir. 1993).

*Burks*, 555 F.3d at 595.

Plaintiff alleges generally that Defendants Walker (Director), Evans (Acting Warden), John Doe Three (Deputy Director), and Major John Doe (Internal Affairs Division) should have known that attacks such as the one against him were likely to occur in the open lunch area, which Plaintiff claims is known by prison officials as the "Thunder Dome" because of previous race-related disturbances. However, such a vague threat does not give rise to a constitutional claim. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). Nevertheless, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834.

In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat

to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996). In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim, *Pinkston*, F.3d at 889 (*discussing Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)). Plaintiff's complaint here does not allege that he made any of the named Defendants aware of any specific threat to his safety prior to the attack, therefore Plaintiff has failed to make out a claim.

Count One must be dismissed with prejudice for failure to state a claim upon which relief may be granted. Defendants John Doe One, John Doe Two, John Doe Three (Deputy Director), and Major John Doe must be dismissed from this action with prejudice.

**Count 2- False Disciplinary Report**

Plaintiff next claims that on September 4, 2008, after investigating the incident, Defendant Schuler wrote a false disciplinary report claiming that Plaintiff committed infractions of fighting, engaging in a dangerous disturbance, and giving false information to an employee. Defendants Clark and Orange signed the disciplinary report as witnesses. Defendants Sanders and Jackson served on the adjustment committee that recommended the discipline of six months' C grade, segregation, gym/yard restriction, loss of good time, and transfer.

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S.

539 (1974). The Seventh Circuit reasoned that prisoners have a right "to be from arbitrary actions of prison officials," *id.* at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation. In the instant complaint, Plaintiff argues that he was *not* provided the procedural protections outlined in *Wolff* because he was not permitted to call all his witnesses, the investigators refused to give polygraph tests to the other inmates they interviewed before issuing the charges, and he was wrongfully found guilty of the false charges. Therefore, Plaintiff would appear to claim that issuing him the (false) conduct violation - and denying him procedural due process in connection with that conduct violation - deprived him of his substantive right "to be free from arbitrary actions of prison officials."

In *Sandin v. Conner*, 515 U.S. 472 (1995), however, the Supreme Court of the United States rejected an argument that "any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause." *Id*. at 484. Furthermore, the Supreme Court held that while a state could create a liberty interest protected by the Due Process Clause, such interests were limited to cases where the discipline imposes an "atypical, significant deprivation" on the inmate in relation to the ordinary incidents of prison life - especially totally discretionary types of confinement such as on administrative segregation and protective custody. *Id*. at 486.

In light of *Sandin*, the Seventh Circuit has observed that "the right to litigate disciplinary confinements has become vanishingly small." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

This Court understands *Sandin* and *Wagner* as holding that even a prisoner's arbitrary confinement in disciplinary segregation, administrative segregation, or protective custody does not implicate any liberty interest - under either the Due Process Clause or state law (even if such confinement is arbitrary) - so long as the confinement itself does not constitute an "atypical, significant deprivation." A particular confinement is "atypical [and] significant" only if the conditions under which the inmate is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner*, 128 F.3d at 1175. If the inmate is housed at the most restrictive prison in the state, the inmate must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.*

In the case currently before the Court, nothing in the complaint or exhibits suggests that the conditions that Plaintiff had to endure because of being found guilty of the (false) conduct violations were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Nor does the demotion to C-grade, gym/yard restriction or the disciplinary transfer to another prison give rise to a due process claim. *See, e.g., Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges); *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992), *citing Montanye v. Haymes*, 427 U.S. 236 (1976); *see also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison).

However, a loss of good conduct credit does implicate a liberty interest because such a loss potentially affects the length of Plaintiff's sentence. As such, Plaintiff does present a

cognizable due process claim regarding the six months of good time credit revoked in this disciplinary proceeding. However, the proper method for challenging the revocation of good time credit is habeas corpus, but only after Plaintiff has exhausted his remedies through the Illinois state courts. *See, e.g., Heck v. Humphrey*, 512 U.S. 477, 480-81 (1994). The Illinois courts have recognized mandamus as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See Turner-El v. West,* 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill. App. 1981)). The State of Illinois must first be afforded an opportunity, in a mandamus action pursuant to 735 ILCS 5/14-101 *et seq*. to consider the merits of Plaintiff's claim. Accordingly, the claim in Count Two is dismissed without prejudice to Plaintiff bringing his claims in a properly filed habeas corpus action, ***but only after he has exhausted his state court remedies***.

**Count 3 - Due Process - Denial of Opportunity to Appeal Disciplinary Action**

After Plaintiff's disciplinary hearing that resulted in the punishment outlined above, he prepared a grievance to contest the imposition of discipline. However, he claims his transfer to Lawrence Correctional Center on October 15, 2008, and subsequent transfer on or about November 13, 2008, to Western Illinois Correctional Center, caused a delay in filing the grievance because his paperwork was not handled properly or returned to him promptly. He claims Defendant McCorkle was responsible for the delay. He further blames Defendants Johnson, Anderson, and Ford (all of the Administrative Review Board) for improperly rejecting his grievance as not having been filed within 60 days of the disciplinary action.

"[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The

Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Therefore, even if this Court were to accept Plaintiff's argument that the Defendants erroneously calculated the deadline for him to file his grievance and thus improperly rejected his attempt to appeal the discipline, such error would not give rise to a due process violation. Accordingly, Count Three must be dismissed with prejudice.

**Defendant Tara Goins**

Plaintiff lists Tara Goins (Grievance Officer, Western Illinois Correctional Center) as a defendant in the caption of his complaint. However, the statement of claim does not include any allegations against this defendant. "A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption." *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). *See also Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir. 1982) (director of state correctional agency not personally responsible for constitutional violations within prison system solely because grievance procedure made him aware of it and he failed to intervene). Therefore, Defendant Goins is dismissed from this action without prejudice.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNTS ONE** and **THREE** against **DEFENDANTS WALKER, EVANS, JOHNSON, ANDERSON, FORD,** and **McCORKLE** fail to state a claim upon which relief may be granted, and thus are **DISMISSED** with prejudice. All of the **JOHN DOE DEFENDANTS** are **DISMISSED** from the action with prejudice. **DEFENDANT GOINS** is **DISMISSED** from the action without prejudice.

**IT IS FURTHER ORDERED** that **COUNT TWO** against **DEFENDANTS SCHULER, SANDERS, JACKSON, CLARK** and **ORANGE** is **DISMISSED** without prejudice as premature. Plaintiff may re-file his claim for revocation of his good conduct credit in a properly filed habeas corpus action, ***but only after he has exhausted his state court remedies***. The dismissal of this action shall **not** count as one of Plaintiff's "strikes" under 28 U.S.C. § 1915(g).

The Clerk shall **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED: March 8, 2011**

    *s/J. Phil Gilbert*
**United States District Judge**